UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| OLIVER WINE COMPANY, INC., d/b/a OLIVER WINERY, <br><br> Plaintiff, <br><br> vs. <br><br> BALL METAL BEVERAGE CONTAINER CORP., <br><br> Defendant. | ) ) ) ) ) ) ) 1:13-cv-00062-RLY-TAB ) ) ) ) ) ) |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS OR TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant, Ball Metal Beverage Container Corp. ("Ball"), moves to dismiss this action or, in the alternative, for an order compelling arbitration and staying all proceedings pending completion of the arbitration. Plaintiff, Oliver Wine Company, Inc., d/b/a Oliver Winery ("Oliver Winery"), opposes the motion. For the reasons set forth below, the court **DENIES** Ball's Motion to Dismiss, and **GRANTS** Ball's alternative Motion to Compel Arbitration and Stay Proceedings.

**I.     Background**

Oliver Winery, an Indiana corporation, is Indiana's oldest winery and one of the largest wineries in the eastern United States. Ball, a Colorado corporation, is the largest manufacturer of aluminum beverage cans in North America. On January 20, 2012, Oliver Winery negotiated and entered into an agreement with Ball ("Agreement") to

1

purchase more than 1,300,000, 250 ml. aluminum cans and ends, which were later to be filled by Oliver Winery with an alcoholic cider. (Compl. ¶¶ 7, 12; Defendant's Ex. A). Oliver Winery alleges that, shortly after it began selling the cider in the cans supplied by Ball, it received complaints of a foul odor emanating from the cans when they were opened. (Compl. ¶ 13). According to the Complaint, the odor was caused by a chemical reaction from copper pitting in the cans, which produces hydrogen sulfide. (*Id*. ¶ 14). As a result of the odor complaints, Oliver Winery issued a voluntary recall of the product, allegedly incurring significant damages. (*Id*. ¶¶ 18-19).

The parties' Agreement, signed by William M. Oliver on behalf of Oliver Winery, contained a section entitled "Applicable Law" which reads, in relevant part:

> BUYER and SELLER agree that this agreement bears a reasonable relationship to the state from which SELLER's invoices are issued and that the laws of such state shall apply in the interpretation and enforcement of this agreement, including, if applicable, its Uniform Commerical Code . . . . Any disputes arising under this agreement shall be resolved in accordance with SELLER's Alternative Dispute Resolution Policy ["ADR Policy"], which is incorporated herein by reference.

(Defendant's Ex. A, § XVI.).

The prerequisites to requesting arbitration are provided in the preliminary paragraphs of the ADR Policy:

> The parties shall attempt to resolve between them in the normal course of business any claim, controversy, dispute, or question arising out of or relating to this agreement (identified in these alternative dispute resolution provisions as "Agreement") or the performance, interpretation or breach thereof (a "dispute"); however, if the parties fail to do so, any such dispute shall be finally settled as provided below.
>
> **(A)   Higher Level Negotiations**

> If a dispute is not resolved in the normal course of business, and a party wishes to pursue the matter further, it must provide the other party written notice requesting "Higher Level Negotiations." Specifically, employees of each party who have authority to settle the dispute and are at least one management level above the personnel who have been previously involved in the dispute shall meet at a mutually agreeable time and place within fifteen (15) calendar days after the receipt of such notice, and thereafter as they together deem necessary, to attempt to resolve the dispute. If the dispute is not resolved by Higher Level Negotiations within thirty (30) calendar days after the receipt of notice and the claiming party wishes to pursue the matter further, it shall provide the other party with written notice requesting arbitration of the dispute.

(Defendant's Ex. B at 1). Paragraph B of the ADR Policy contains the arbitration provision:

> **(B)  Arbitration**.
>
> Should the parties fail to resolve the dispute in accordance with Paragraph (A) above, any dispute shall be finally settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules. . . . The arbitration proceedings shall be governed by the Federal Arbitration Act (Title 9 of the U.S. Code). The arbitration proceedings shall be governed by the law governing the Agreement; however, if no law is so specified, the arbitration shall be governed by the law of the State of Colorado.

(*Id.*).

On December 6, 2012, Oliver Winery sued Ball in Indiana state court, asserting claims for breach of contract, breach of express warranties, and breach of implied warranties of fitness for a particular purpose, negligence, and product liability. On January 10, 2013, Ball removed Oliver Winery's claims to this court.

On May 21, 2013, the parties engaged in a settlement conference with the Magistrate Judge. Prior to the settlement conference, counsel for Ball notified counsel for Oliver Winery that the settlement conference would constitute a Higher Level

Negotiation in accordance with the ADR Policy. (Affidavit of J. Stephen Bennett ¶ 2). Oliver Winery claims this was the first it knew of the ADR Policy. (Affidavit of Julie Adams ¶¶ 5-7). According to Oliver Winery, the parties never discussed an ADR Policy; in fact, Oliver Winery claims the first time it had possession of the ADR Policy was the day of the parties' settlement conference, May 21, 2013. (*Id.* ¶¶ 5-6). The case did not settle.

On June 7, 2013, Ball served a Demand for Arbitration and filed the same with the American Arbitration Association.

**II.   Discussion**

The Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. Section 3 of the FAA "also provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3; and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (citing 9 U.S.C. §§ 3, 4).

An arbitration agreement is a contract, the interpretation of which is a matter of law. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). Pursuant to the parties' Agreement (and the ADR Policy), the court applies the law of the State of Colorado.

The purpose of contract interpretation is to ascertain the intent of the parties at the time the contract was written by looking to the plain language of the agreement. *Id*. If

4

the terms of the contract are unambiguous, the terms are conclusive of the parties' intent. *Id*. Thus, an arbitration agreement, like any contract, must be given effect according to the plain and ordinary meaning of its terms. *Id*.

As noted above, the parties' Agreement provides that any disputes arising under the Agreement are subject to Ball's ADR Policy, "which is incorporated herein by reference." (Defendant's Ex. A, § XVI.). "Where a party seeks to enforce terms or conditions incorporated by reference in a contract, 'it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'" *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F.Supp.2d 1135, 1150 (D. Colo. 2012). Evidence of assent may be gleaned by the totality of the circumstances and by the acts of the parties. *Id*. In addition, a party may manifest assent to terms "by promising to perform or by actually performing." *Id*. at 1149.

Oliver Winery presents two arguments in opposition to the present motion. First, it argues it never assented to the arbitration provision in the ADR Policy. According to Oliver Winery, the parties never discussed arbitration and it was never given a copy of the ADR Policy until the day of the May 21, 2013, settlement conference. Second, it argues Ball has waived any right to assert the ADR Policy.

### A.     Oliver Winery's Assent

The plain and unambiguous language of the parties' Agreement expressly incorporated Ball's ADR Policy by reference. William Oliver, on behalf of Oliver Winery, signed the Agreement. Consequently, he is presumed under Colorado law to have read and understood the terms of the Agreement, including the existence and

incorporation of the ADR Policy into the Agreement.  *Barciak v. United of Omaha Life Ins. Co.*, 777 F.Supp. 839, 843 (D. Colo. 1991) ("[O]ne who signs a contract is presumed to have read and understood its terms.").  Oliver Winery's uncommunicated, subjective intent is immaterial.  *See Vernon*, 857 F.Supp.2d at 1149 ("An objective manifestation of assent is not rebutted by that same party's uncommunicated, subjective intent.").

The fact that Oliver Winery did not request a copy of the ADR Policy or otherwise discuss the ADR Policy, does not prevent its enforceability.  For example, in *Vernon v. Qwest Communications, supra.*, the Tenth Circuit held that the plaintiffs, customers of Qwest Communication's internet service, voluntarily accepted an arbitration clause in Qwest's Subscriber Agreement.  *Id*. at 1152.  Qwest customers were made aware of the Subscriber Agreement through a Welcome Letter, a December 2005 letter to existing customers explaining that high speed internet services would henceforth be governed by the Subscriber Agreement, and an installation disc.  *Id*. at 1150-51.  They were also informed they could access the Subscriber Agreement at www.quest.com/legal.  *Id*.  The Court reasoned:

> While the Subscriber Agreement and arbitration clause may not have been physically presented to each Plaintiff and did not automatically appear on the subscriber's computer screen during the software installation process, those terms and conditions were not hidden or difficult to find.  Even if Plaintiffs had only received the Welcome Letter, at that point they were fully capable of finding the Subscriber Agreement and arbitration provision on the Qwest website. . . .

*Id.* at 1151.  The Court further found that the plaintiffs manifested their assent by their continued use of Qwest's high speed internet service for several months after installing the necessary software and receiving a Welcome Letter.  *Id*. at 1152.  This case

6

presents an even stronger case for enforceability, as the party objecting to the arbitration agreement's enforceability is not simply a customer, but a sophisticated commercial entity.

Oliver Winery, by its President, William Oliver, voluntarily signed the Agreement. The law presumes that by that action, he read and understood the Agreement, including the "Applicable Law" section that incorporated Ball's ADR Policy. Oliver Winery's argument that the ADR Policy was not publicly available is unpersuasive; all it had to do was ask Ball for a copy. The court therefore finds that by signing the Agreement and performing under its terms, Oliver Winery manifested its assent to the terms and conditions of the Agreement, including the ADR Policy. The ADR Policy, incorporated by reference into the Agreement, is valid and enforceable.

### B.   Waiver

Oliver Winery argues that, even if a valid agreement to arbitrate existed, Ball implicitly waived its contractual right to arbitrate by removing this action from state to federal court, rather than filing a motion to arbitrate in the state court proceedings. In support of this argument, Oliver Winery cites *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995). In that case, the defendant removed the action from state to federal court, but did not seek to stay the action pending arbitration until after thousands of documents had been exchanged in discovery, and a trial date had been set. *Id.* at 389. By removing the case to federal court, "without at the same time asking the district court for an order to arbitrate, it manifested an intention to resolve the dispute through the processes of the federal court." *Id.* at 390.

In *Halim v. Great Gatsby's Auction Gallery, Inc.*, the Seventh Circuit clarified the holding in *Cabinetree*, stating that the Court "has not found waiver where removal was the only action taken by the party against whom the waiver was to be enforced." 516 F.3d 557, 562 (7th Cir. 2008). Specifically, the defendant in *Halim* removed the action from state to federal court and, before any other pleadings were filed, sought to dismiss the case by invoking the arbitration clause. *Id*. "By doing so, [the defendant] asserted its intent to resolve the dispute in arbitration and not litigation." *Id*.

In the present case, Ball removed the action from state to federal court in a timely manner. It asserted its right to arbitrate as an affirmative defense in its Answer. Prior to the May 21, 2013, settlement conference, it notified counsel for Oliver Winery that it intended to assert its right to arbitrate if the settlement conference was unsuccessful. The settlement conference constituted Higher Level Negotiations pursuant to its ADR Policy. At that point, Ball's claims became arbitrable. Ball filed its Demand for Arbitration seventeen (17) days later. Based on these facts, the court finds Ball did not waive its contractual right to arbitrate Oliver Winery's claims.

### III.   Conclusion

For the reasons set forth above, the court **DENIES** Ball's Motion to Dismiss and **GRANTS** Ball's Motion to Compel Arbitration and Stay Proceedings (Docket # 18).

**SO ORDERED** this 11th day of October 2013.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.